CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Ray Ballister, Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Nehemiah Kong**,<br><br>        Plaintiff,<br><br>    v.<br><br>**Yukiko Yuge**, in individual and representative capacity as trustee of the Yuge Family Trust established December 2, 1987;<br>**Araceli Ortiz De Jara**; and Does 1-10,<br><br>        Defendants. | **Case No**.<br><br>**Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |

Plaintiff Nehemiah Kong complains of Defendants Yukiko Yuge, in individual and representative capacity as trustee of the Yuge Family Trust established December 2, 1987; Araceli Ortiz De Jara; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a paraplegic who suffers from Polio. He uses a wheelchair for mobility. He has a

1

Complaint

specially equipped van with a ramp that deploys out of the passenger side of his van.

2. Defendant Yukiko Yuge, in individual and representative capacity as trustee of the Yuge Family Trust established December 2, 1987, owned the real property located at or about 16531 S. Western Avenue, Gardena, California, in February 2018.

3. Defendant Yukiko Yuge, in individual and representative capacity as trustee of the Yuge Family Trust established December 2, 1987, owns the real property located at or about 16531 S. Western Avenue, Gardena, California, currently.

4. Defendant Araceli Ortiz De Jara owned JT's Bar and Cocktails located at or about 16531 S. Western Avenue, Gardena, California, in February 2018.

5. Defendant Araceli Ortiz De Jara owns JT's Bar and Cocktails ("Bar") located at or about 16531 S. Western Avenue, Gardena, California, currently.

6. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with

Complaint

Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to the Bar in February 2018 for cocktails.

11. The Bar is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Bar.

13. Unfortunately, there were no parking spaces marked and reserved for persons with disabilities at the Bar during Plaintiff's visit.

14. Currently, there is not a single parking space marked and reserved for persons with disabilities at the Bar.

15. On information and belief, the plaintiff alleges that there used to be a parking space marked and reserved for persons with disabilities. However, the parking space has either been paved over or been allowed to fade beyond recognition.

16. Defendants do not have a policy or procedure in place to ensure that the parking space is maintained for use by persons with disabilities.

17. Defendants have failed to maintain in operable working condition those features of facilities and equipment that are required to be readily accessible to and usable by persons with disabilities at the Subject Property.

Complaint

18. Plaintiff personally encountered this barrier.

19. This inaccessible parking lot denied the plaintiff full and equal access and caused him difficulty, discomfort, and embarrassment.

20. Restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of the Bar.

21. Meanwhile, and even though plaintiff did not personally confront the barrier, the restroom doorway clear passage width was less than 32 inches and inaccessible to wheelchair users. In fact, the restroom doorway is 29 inches wide.

22. The toilet stall was improperly configured and too small for wheelchair users, measuring 60 inches in width and 45 inches in depth.

23. The restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the finish floor.

24. The restroom sink had a cabinet style sink that did not provide any knee clearance for wheelchair users.

25. Instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet, there were no grab bars.

26. Currently, the restroom doorway clear passage width is less than 32 inches and inaccessible to wheelchair users.

27. Currently, the toilet stall is improperly configured and too small for wheelchair users, measuring 60 inches in width and 45 inches in depth.

28. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor.

29. Currently, the restroom sink has a cabinet style sink that does not provide any knee clearance for wheelchair users.

30. Currently, instead of providing two grab bars on adjacent or parallel walls for use by persons with disabilities who need to transfer to the toilet,

Complaint

there are no grab bars.

31. Plaintiff plans to return and patronize the Bar but will be deterred from visiting until the defendants remove the barriers.

32. The defendants have failed to maintain in working and useable conditions those features required to provide ready access to persons with disabilities.

33. The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

34. For example, there are numerous paint/stripe companies that will stripe a van accessible parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

35. Meanwhile, the mirror in the restroom could be removed or lowered so that it is accessible.

36. Plaintiff is and has been deterred from returning and patronizing the Bar of his knowledge of the barriers that exist. Plaintiff will, nonetheless, return to assess ongoing compliance with the ADA and will return to patronize the Bar as a customer once the barriers are removed.

37. Given the obvious and blatant nature of the barriers and violations alleged herein, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the complaint, to provide proper notice regarding the scope of this lawsuit, once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See

Complaint

*Doran v. 7-11*, 524 F.3d 1034 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

38. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all defendants (42 U.S.C. section 12101, et seq.)

39. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

40. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

    a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

Complaint

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

41. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

42. Here, the failure to provide a van accessible parking space is a violation of the ADA.

43. All doors to restrooms must have a minimum clear opening of 32 inches with the door open 90 degrees, measured between the face of the door and the opposite stop. 1991 Standards § 4.22.2; 4.13.5; 2010 Standards § 404.2.3.

44. Here, the failure to provide the 32 inch wide restroom doorway opening is a violation of the ADA.

45. Where a toilet stall is provided in a restroom in existing facilities, the size and arrangement of the standard toilet stall shall comply with either Fig. 30(a) (standard stall) or Figure 30(b) (alternate stall). 1991 Standards § 4.17.3. A

Complaint

standard stall must be at least 60 inches wide by 56 inches deep (if the toilet is wall mounted) or 59 inches deep if the toilet is floor mounted. 1991 Standards § Figure 30(a). An alternate stall must meet one of two configurations: either (1) be exactly 36 inches by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide front transfer grab bars or (2) be at least 48 inches wide by at least by at least 66 inches deep (if the toilet is wall mounted) or 69 inches (if the toilet is floor mounted) and provide side transfer grab bars. 1991 Standards § Figure 30(b).

46. Here, the toilet stall does not meet any option under the ADA and is in violation of the law.

47. Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

48. Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

49. Sinks must provide knee clearance of at least 29 inches in height. 1991 Standards § 4.19.2 and Figure 31; 2010 Standards § 606.2 and 306.

50. Here, no such knee clearance was provided and this is a violation of the ADA.

51. For a toilet to be considered accessible under the ADA, there must be two grab bars on walls adjacent to the toilet to assist persons with disabilities to transfer to the toilet. 1991 Standards § 4.16.4; 2010 Standards § 604.5.

52. Here, the failure to provide compliant grab bars is a violation.

53. A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

54. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the law.

Complaint

55. Given its location and options, plaintiff will continue to desire to patronize the Bar but he has been and will continue to be discriminated against due to the lack of accessible facilities and, therefore, seeks injunctive relief to remove the barriers.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ § 51-53)

56. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

57. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

58. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000.

Complaint

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: March 2, 2018                CENTER FOR DISABILITY ACCESS

By: _____

Chris Carson, Esq.
Attorney for plaintiff

Complaint